# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | § | |
| | § | |
| **VS.** | § | **11-cr-00016** |
| | § | |
| **ADE LAWRENCE and** | § | **SEALED** |
| **FELICIA PARKER** | § | |

## MEMORANDUM AND ORDER

Before the Court is Ade Lawrence's Motion to Dismiss Indictment Based on Absence of Subject Matter Jurisdiction and a Violation of the Due Process Clause ("Motion"). (Doc. No. 162.) After considering the Motion, the Government's Response, and the applicable law, the Court concludes that the Motion must be **DENIED.** The Court also denies all other pending motions.

Ade Lawrence ("Lawrence" or "Defendant") is charged with: "Knowingly and intentionally attempt[ing] and/or conspire[ing] to have United State[s] Citizens board an aircraft in possession of 5 kilograms or more of a mixture or substance containing a detectable amount of cocaine, a schedule II controlled substance, with intent to distribute," in violation of 21 U.S.C. § 963.[1] (Doc. No. 1.) Gwendolyn Free ("Free"), who

---

[1] 21 U.S.C. § 959 reads as follows:

    (a) Manufacture of distribution for purpose of unlawful importation

        It shall be unlawful for any person to manufacture or distribute a controlled substance in schedule I or II or flunitrazepam or listed chemical—

        (1) intending that such substance or chemical will be unlawfully imported into the United States or into waters within a distance of 12 miles of the coast of the United States; or

1

was interviewed as part of this investigation, stated that she agreed, in the beginning of April 2010, to act as a courier for Lawrence by transporting cocaine from Brazil to London. (Doc. No. 1, Affidavit in Support of a Criminal Complaint ¶ 4.) As part of this illegal agreement, Free stated, she boarded an aircraft departing from Houston International Airport ("IAH") to Sao Paulo, Brazil, on or about April 24, 2010, in order to pick up packages of cocaine. (*Id.*) According to Free, she then traveled to Panama, Switzerland, Amsterdam, and finally to London. (*Id.*) After successfully delivering the drugs in London and receiving instructions from Lawrence, Free stated, she was paid $10,000. (*Id.*) Free explained that she then returned to the United States. (*Id.*) According to Free, another of Lawrence's couriers was a woman named Felicia Parker. (*Id.* ¶ 5.)

---

(2) knowing that such substance or chemical will be unlawfully imported into the United States or into waters within a distance of 12 miles of the coast of the United States.

(b) Possession, manufacture, or distribution by person on board aircraft

It shall be unlawful for any United States citizen on board any aircraft, or any person on board an aircraft owned by a United States citizen or registered in the United States, to—

(1) manufacture or distribute a controlled substance or listed chemical; or

(2) possess a controlled substance or listed chemical with intent to distribute.

(c) Acts committed outside territorial jurisdiction of the United States; venue

This section is intended to reach acts of manufacture or distribution committed outside the territorial jurisdiction of the United States. Any person who violates this section shall be tried in the United States district court at the point of entry where such person enters the United States, or in the United States District Court for the District of Columbia.

21 U.S.C. § 963 provides:

Any person who attempts or conspires to commit any offense defined in this subchapter shall be subject to the same penalties as those prescribed for the offense, the commission of which was the object of the attempt or conspiracy.

On June 21, 2010, Lawrence's wife, Sherree Lawrence, was arrested in Brazil by the Brazilian Federal Police at the International Airport of Sao Paulo while attempting to smuggle six kilograms of cocaine out of the country. (*Id.* ¶ 8.) Free also introduced another courier, Monica Mitchell ("Mitchell"), to Lawrence. (*Id.* ¶ 9.) In her interview, Mitchell explained that, throughout May, June, and July of 2010, she, Lawrence and Free discussed the possibility of her traveling to Brazil to pick up a package for Lawrence. (*Id.* ¶ 10.) According to Mitchell, she was instructed by Lawrence to apply for her passport. (*Id.*) After receiving the passport, Mitchell stated, she gave it to Lawrence, who applied for and received a visa for her to travel to Brazil. (*Id.*) Mitchell then traveled from Austin to Houston, where Lawrence picked her up from the bus station and took her to a hotel. (*Id.*) Mitchell explained that, after arriving at the hotel, Lawrence called Free, who came and picked up Mitchell, took her to her apartment, and gave Mitchell clothes to place in her luggage. On or about July 17, 2010, Mitchell stated, Lawrence picked her up from the hotel and took her to IAH, where he had purchased a plane ticket for her. (*Id.* ¶ 11.) According to Mitchell, prior to leaving the hotel, Lawrence gave her a leather jacket containing $15,000. (*Id.*) Mitchell said that Lawrence instructed her to give the jacket to an African man in Brazil. (*Id.*) Additionally, Mitchell stated, Lawrence provided her with a Brazilian cellular phone and $500 for expenses. (*Id.*)

Upon arriving in Brazil, Mitchell explained, she received instructions from Lawrence to contact the African man, proceeded to contact him, and gave him the leather jacket. (*Id.* ¶ 12.) After giving the man the jacket, Mitchell stated, she received approximately eight bags that she believed to contain, and were later found to contain, a substance that tested positive for the presence of cocaine. (*Id.*) According to Mitchell, she

boarded an aircraft to Panama City, Panama with the eight bags on or about July 23, 2010. (*Id.* ¶ 13.) She was arrested by Panamanian authorities two days later. (*Id.*) In total, eight kilograms of cocaine were found in her luggage. (*Id.*)

Lawrence asserts that the Indictment should be dismissed because the extraterritorial jurisdiction set forth in 21 U.S.C. § 959 is not applicable to this case, or alternatively violates Lawrence's due process rights. (Doc. No. 162, Mot. to Dismiss Indictment 1.) Lawrence points out that the Government invokes the extraterritorial reach of 21 U.S.C. § 959; however, he argues that that provision should not be applied to offenses that do not involve the importation of drugs into the United States. (*Id.* 2.) If Congress did intend to the provision to apply to extraterritorial drug offenses not involving importation, Lawrence asserts, Congress has exceeded the legislative power vested in it by the Constitution. (*Id.* 2-3.)

Lawrence explains that § 959 falls within Subchapter II of Title 21 (Food and Drugs) Chapter 13, which is entitled "Import and Export." (*Id.* 3.) In the instant case, Lawrence emphasizes, there are no allegations of attempted importation. (*Id.*) Lawrence contends that the Fifth Circuit has applied criminal laws extraterritorially "based on the government's right to defend itself against obstruction, or fraud, or criminal acts that were intended to have, or cause effects within the United States"; in these cases, "[b]ut for the need to protect its citizens, territory, or regulate activities within its boundaries, the United States would not have obtained jurisdiction." (*Id.* 7.) While international law provides for the extraterritorial application of penal laws under some circumstances, Lawrence believes that these exceptions do not apply to his situation because "Lawrence is neither a United States citizen nor is there any evidence that the alleged acts as charged

in the indictment created, or were intended to create any effect in the United States." (*Id.* 10.) Referring to the Second and Ninth Circuit's requirement that penal laws be applied extraterritorially only when there is a sufficient "nexus" with the United States, Lawrence also avers that there is no "nexus" between Lawrence's conduct and the United States. (*Id.* 11-12.) Indeed, Lawrence insists that he did not have sufficient reason to assume he would be haled into United States courts because of a conspiracy to transport cocaine between foreign countries. (*Id.* 12.) Finally, Lawrence argues that § 959(b) was intended to be read in conjunction with § 959(a), and thus was intended for offenses in which controlled or illegal substances are unlawfully imported into the United States. (*Id.*) On its own, Lawrence contends, § 959(b) is overbroad in violation of the due process clause of the United States Constitution. (*Id.*)

The Government responds that Lawrence conspired within the United States to traffic narcotics with co-conspirators who were United States citizens. (Doc. No. 191, Gov.'s Resp. 7.) According to the Government, a substantial portion of co-conspirator activities took place within the United States. (*Id.*) Indeed, the Government contends, Lawrence's actions had a direct effect within the territory of the United States. (*Id.*) As the crime was originated and coordinated in the United States, the Government avers, there is a direct nexus between the criminal conduct occurring internationally and its effect on the United States. (*Id.*) Furthermore, the Government asserts, the domestic and international security of the United States is clearly threatened by the violence and economic impacts associated with international narcotic activity; drug trafficking threatens the reputations, diplomacy efforts, and foreign financial interests of the United States. (*Id.*)

The Court agrees with the Government. According to the Indictment, a substantial portion of the conspiracy took place in the United States. Additionally, Congress clearly intended for the statute to apply extraterritorially, as § 959(c) provides for extraterritorial application. Jurisdiction under these circumstances is consistent with international law. "[U]nder the 'protective principle,' a state 'has jurisdiction to prescribe a rule of law attaching legal consequences to conduct outside its territory that threatens its security as a state or the operations of its governmental functions, provided the conduct is generally recognized as a crime under the law of states that have reasonably developed legal systems.'" *U.S. v. Perlaza*, 439 F.3d 1149, 1162 n.15 (9th Cir. 2006) (quoting *U.S. v. Pizzarusso*, 388 F.2d 9, 10-11 (2d Cir. 1968)). *See also U.S. v. Hill*, 279 F.3d 731, 739 (9thd Cir. 2002) ("Under the territorial jurisdiction theory [under international law], jurisdiction is appropriate if the acts performed outside the United States produce detrimental effects within the United States."). As activities related to the conspiracy took place in large part in the United States, the international activities had a direct effect on the United States' security and the operations of its governmental functions.

Furthermore, the domestic acts of conspiracy constitute a "burden U.S. enforcement agencies." *U.S. v. Villanueva*, 408 F.3d 193, 199 (5th Cir. 2005). The activity in the United States constitutes a substantial nexus with the United States; and, by conspiring in the United States, Lawrence had ample reason to foresee he would be haled into this country's courts. Therefore, exercise of jurisdiction under these circumstances does not violate due process. Finally, the Court can find no authority to support Lawrence's proposition that § 959(b) must be read in conjunction with § 959(a), and therefore declines to do so.

For these reasons, the Court denies the Motion. Finding that the additional pending motions in this case likewise lack merit, the Court denies all other pending motions.

**IT IS SO ORDERED.**

**SIGNED** at Houston, Texas on this the 22nd day of February, 2012.

**KEITH P. ELLISON**
**US DISTRICT COURT JUDGE**